J-S22019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JALIK PEAY | : | |
| | : | |
| Appellant | : | No. 2627 EDA 2025 |

Appeal from the PCRA Order Entered August 21, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011915-2010

BEFORE:   PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED AUGUST 11, 2026**

Jalik Peay ("Peay") appeals *pro se* from the order denying his second Post Conviction Relief Act[1] ("PCRA") petition as untimely filed.  We affirm.

In March 2010, Peay, Ashia Terry ("Terry"), and another man were at an intersection in Philadelphia.  All were affiliated with the same gang. Shikeem Alexander-Frederick (the "Victim") arrived and engaged in an argument with Peay.  Peay shot the Victim five times with a .357 Smith and Wesson revolver.  The Victim survived but was in a medically induced coma for a month.  When he awoke, he identified Peay as the person who shot him. Police officers arrested Peay at home, where they also recovered, in his room, a .357 Smith and Wesson revolver and another handgun.  The Commonwealth charged Peay with this shooting.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

Pertinent to the issues in this appeal, we summarize that Philadelphia Police Detective Greg Singleton ("Detective Singleton") interviewed a witness, Michael Woodson ("Woodson"). Woodson told Detective Singleton that he knew both Peay and the Victim from the neighborhood. Just before the shooting, Woodson walked past Peay, Terry, and the third man, who "looked like they were up to something." N.T., 6/6/12, at 97. Woodson entered his friend's house, and "as soon as [he] sat down[, he] heard about eight shots." *Id*. Ten to fifteen minutes later, Peay walked by and appeared "paranoid, sweating, and nervous." *Id*.

According to Peay, Police Detective Nathan Williams ("Detective Williams") interviewed a witness, Jesse Jones ("Jones"). *See* Memorandum of Law in Support of Petition for Post-Conviction Relief Act, 10/3/24, at unnumbered 6. Jones stated, and later testified at trial, that on the afternoon of the shooting, Peay and Terry "approached him and asked 'what's up with [the Victim? W]hen is a good time to get (rob) him?" *Commonwealth v. Peay*, 134 A.3d 104 (Pa. Super. 2015) (unpublished memorandum at 2) (record citation omitted), *appeal denied*, 135 A.3d 585 (Pa. 2016). At trial, Jones acknowledged that he had pleaded guilty in federal court in connection with two robberies, he was awaiting sentencing, and his attorney advised him "that it [was] in [his] best interest to cooperate with the federal government." N.T., 6/7/12, at 51-53. However, Jones stated that the federal prosecutor did

not "make any specific promises" regarding a sentence, and in return for testifying, he did not "get anything." *Id*. at 46-47.

Meanwhile, while Peay was incarcerated awaiting trial, he had telephone conversations with his father, in which he discussed "the witnesses who were going to testify against him at his upcoming trial," identified the Victim by name, and stated the Victim "got two sets of bullets in him." *Peay*, 134 A.3d 104 (unpublished memorandum at 10-11). In letters and telephone conversations with others, Peay also "made several references to ending [the Vicitm's] life." *Id*. at 4 (record citation omitted).

In June 2010, five days before Peay's preliminary hearing, an unidentified gunman fatally shot the Victim on the porch of his home. The instant charges, relating only to the March 2010 non-fatal shooting, proceeded to a jury trial in 2012. At that time, "no one, including [Peay], was charged with the [June 2010] murder of" the Victim. *Id.* (record citation omitted).

At trial, Woodson disavowed his earlier statement to Detective Singleton, and denied hearing gunshots or seeing Peay on the day in question. *See* N.T., 6/6/12, at 83, 86. Woodson testified that when he gave the statement, he was under the influence, having ingested thirty Percocet pills and four cans of beer. *See id*. at 87-88, 104. Woodson testified that he told Detective Singleton that he "was high" and "drunk," but the detective "guided [him] through the whole interview [and Woodson] was just like, yes, whatever." *Id*. at 87-88, 91. Woodson also testified that narcotics officers

- 3 -

had arrested him earlier that day and they told him "they would help [him] out if" he "helped" them. *Id*. at 88.

The Commonwealth impeached Woodson with his prior statement to the detective. It also confronted him with his testimony at the September 2010 preliminary hearing, that he was intoxicated at the time of the police statement, but he did in fact hear gunshots on the day of the shooting. *See id*. at 123. Woodson agreed that he was not under the influence at the preliminary hearing, as he was "in custody at that point." *Id*. at 126.

Detective Singleton testified at trial that on the day of the statement, Woodson did not appear to be under the influence of narcotics or alcohol. *See* N.T., 6/7/12, at 7-8. Detective Singleton typed Woodson's statement and Woodson reviewed it, attested to its accuracy, and signed it. *See id*. at 10.

The jury found Peay guilty of attempted murder, aggravated assault, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of a crime*.*

On September 27, 2012, the trial court imposed an aggregate sentence of twenty and one-half to forty-one years' imprisonment.

Peay filed a direct appeal, and this Court affirmed the judgment of sentence. The Supreme Court of Pennsylvania denied Peay's petition for allowance of appeal on March 23, 2016. *See Peay*, 134 A.3d 104 (unpublished memorandum), *appeal denied*, 135 A.3d 585.

In July 2016, Peay filed a timely first PCRA petition, which the PCRA court dismissed. Peay filed an appeal to this Court, which affirmed the dismissal. *See Commonwealth v. Peay*, 193 A.3d 1087 (Pa. Super. 2018) (unpublished memorandum).

On October 3, 2024, Peay filed the underlying *pro se* PCRA petition, his second. He cited "the unavailability at the time of trial of exculpatory evidence that . . . would have changed the outcome of the trial." Petition for Post-Conviction Relief Act, 10/3/24, at unnumbered 2. Peay asserted that: he overheard inmates discussing police detectives accused of misconduct; he submitted a request for information to the prison library staff; and he received the information a few days later, on July 27, 2024. First, Peay claimed, with no further explanation aside from citing other trial docket numbers, that Detectives Singleton and Williams were "accused of targeting vulnerable witness' [*sic*]," "threat[en]ing to charge someone if they did not agree to testify," and "supply[ing] material information to witness [*sic*]." Memorandum of Law in Support of Petition for Post-Conviction Relief Act, 10/3/24, at unnumbered 1, 6.

Second, Peay averred that in this case, Detective Singleton interviewed Woodson, who "never cooperated," and "took advantage of his vulnerable condition" in order "to place [him] at the scene of the crime." *Id*. at unnumbered 1-2. Peay claimed that "if the allegations of Detective Singleton's misconduct [were] disclosed earlier," Woodson's statement could have been

suppressed. *Id*. at 2 (unnecessary capitalization omitted). Peay also asserted that Woodson's statement "stripped [him] of his confrontation rights." *Id*.

Third, Peay reiterated that Detective Williams interviewed Jones, who had stated that on the afternoon of the shooting, Peay and Terry asked him about a "a good time" to rob the Victim. *Peay*, 134 A.3d 104 (unpublished memorandum at 2.) Peay claimed that at the time of trial, Jones was in federal prison for bank robberies, faced "40 to 80 years," and made the statement to police "in order to help himself" in his own case. Memorandum of Law in Support of Petition for Post-Conviction Relief Act, 10/3/24, at unnumbered 6; Supplement to PCRA Filed 2024, 3/6/25, at unnumbered 3. Peay reasoned that Jones' testimony "was not solid enough to stand on its own because of [his] credibility." Memorandum of Law in Support of Petition for Post-Conviction Relief Act, 10/3/24, at unnumbered 6.

Finally, in a supplemental PCRA petition,[2] Peay averred that on February 20, 2025, he learned, "by way of the District Attorney's Office conviction

---

[2] Peay did not seek leave to file a supplemental PCRA petition. The Pennsylvania Supreme Court "has condemned the unauthorized filing of supplements and amendments to PCRA petitions, and held that claims raised in such supplements are subject to waiver." *Commonwealth v. Reid*, 99 A.3d 470, 484 (Pa. 2014). However, this Court has held that when a "petitioner filed a supplement without leave of court[, but] the PCRA court did not strike the supplement and considered [it] when it addressed the petitioner's arguments," "the PCRA court implicitly permitted amendment under Rule 905(A)." *Commonwealth v. Brown*, 141 A.3d 491, 503-04 (Pa. Super. 2016) (unnecessary capitalization omitted). *See also* Pa.R.Crim.P. 905(A) (providing that a PCRA "judge may grant leave to amend or withdraw

*(Footnote Continued Next Page)*

integrity unit," that Police Detective Philip Nordo ("Detective Nordo") "has been accused of sexual misconduct since April of 2005 and has been . . . convicted of sexual . . . and various other crimes." Supplemental to PCRA Filed 2024, 3/6/25, at 2. Peay asserted:

> Detective Nordo interviewed Jamial Burley [("Burley"), who stated] that [Terry] admitted to shooting and killing [the Victim] in order to stop him from testifying against [Peay. T]his was made [a part] of the record . . . and used as the main identifier of who killed the . . . Victim and why.
>
> . . . Without . . . Burley's statement the Commonwealth [had] no way of directly connecting the . . . Victim[']s murder to [Peay] or anyone associated with [him].

*Id*. at 3-4.

The PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Peay's PCRA petition without a hearing, finding the petition did not properly invoke any timeliness exception and thus was untimely. The PCRA court dismissed the petition on July 2, 2025. Peay filed a timely notice of appeal. He and the PCRA court have complied with Pa.R.A.P. 1925.

Peay presents the following issues for our review:

_____

a petition for post-conviction collateral relief at any time[, and a]mendment shall be freely allowed to achieve substantial justice"). Here, the PCRA court addressed the claims regarding Detective Nordo, raised for the first time in the supplemental PCRA petition. *See* PCRA Court Opinion, 11/25/25, at 8-9. We thus decline to find Peay has waived these claims.

- 7 -

A) When the Commonwealth failed to disclose the misconduct on behalf of Detectives . . . Nordo, . . . Williams, and . . . Singleton did that not constitute a **Brady**[3] violation?

B) Did the Commonwealth not obstruct [Peay's] due diligence by withholding this information about these detectives for over 15 years?

C) Was the information about these detectives['] misconduct not in the possession of the Commonwealth?

D) Could this information about the detectives['] misconduct (. . . Nordo, . . . Williams, and . . . Singleton) be used for impeachment purposes?

E) Is the Commonwealth's withholding of this impeachment evidence not a violation of [Peay's] 14th Amendment [*sic*]?

F) Due to [Peay] meeting all prongs for a **Brady** violation does that not get [Peay]over the time bar?

Peay's Brief at unnumbered 11-12 (unnecessary capitalization omitted).

Peay avers the Commonwealth violated his due process rights, as well as **Brady**, by failing to disclose the detectives' misconduct. We note the applicable standard of review:

> [A]n appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. Our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party[.]

_____

[3] **See Brady v. Maryland**, 373 U.S 83 (1963). "In **Brady**, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Commonwealth v. Williams**, 244 A.3d 1281, 1285 n.12 (Pa. Super. 2021).

- 8 -

***Commonwealth v. Mickeals***, 335 A.3d 13, 20 (Pa. Super. 2025) (citations and quotation marks omitted).

We first consider the timeliness of Peay's PCRA petition. "The PCRA timeliness requirements are jurisdictional in nature. '[I]f a petition is untimely, and none of the timeliness exceptions are met, courts do not have jurisdiction to address the substance of the underlying claims.'" ***Id***. Under the PCRA, any petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States . . . or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

A court may consider a PCRA petition filed beyond this deadline if the petitioner explicitly pleads and proves one of three exceptions set forth under subsection 9545(b)(1): a claim of governmental interference; newly discovered facts; or a newly recognized constitutional right that applies retroactively. ***See*** 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). A petition invoking a timeliness exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Under the newly discovered fact exception, a petitioner may plead that "the facts upon which the claim is predicated were unknown to the petitioner

and could not have been ascertained by the exercise of due diligence."  42

Pa.C.S.A. § 9545(b)(1)(ii).  This exception

> requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence.  Due diligence demands that the petitioner take reasonable steps to protect his own interests.  A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. . . .

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015).

> Our Court has further explained:

> The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception.  "This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'"  Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts.  ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii).

> Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim.  ***See*** 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available ***and would have changed outcome of trial if it had been introduced***).

>> In other words, the "new facts" exception at:

>> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the ***facts*** upon which the claim was predicated were ***unknown*** and 2) could not have been ascertained by the exercise of ***due diligence***.  If the petitioner alleges and proves these two

- 10 -

> components, then the PCRA court has jurisdiction over the claim under this subsection.
>
> Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.[]

*Id*. at 176-77 (paragraph break and some emphasis added and footnote and some citations omitted).

> Finally, our Court has explained that due diligence
>
> does not require perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances to uncover facts that may support a claim for collateral relief. As such, the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented. . . .
>
> In most cases, petitioners cannot claim that information of public record is unknown in order to establish the first prong of the test. However, our Supreme Court [has] determined that the public record presumption does not apply to *pro se* prisoners. The Court clarified that "[a] *pro se* incarcerated petitioner is still required to prove that the facts upon which his claim of a timeliness exception under subsection 9545(b)(1)(ii) is based were unknown to him and not ascertainable by the exercise of due diligence. . . ."

*Commonwealth v. Brensinger*, 218 A.3d 440, 449 (Pa. Super. 2019) (*en banc*) (citations and quotation marks omitted).

Here, on direct appeal, our Supreme Court denied Peay's petition for allowance of appeal on March 23, 2016. Peay had ninety days, or until June 21, 2016 to file a writ of *certiorari* with the United States Supreme Court. *See* U.S.Sup.Ct.R. 13. He did not, and thus his judgment of sentence became final for PCRA purposes that day. *See* 42 Pa.C.S.A. § 9545(b)(3). Peay then generally had one year, or until June 21, 2017 to file a PCRA petition. *See* 42

- 11 -

Pa.C.S.A. § 9545(b)(1). Peay filed the underlying petition more than seven years later, on October 3, 2024. Accordingly, it is facially untimely unless Peay can successfully plead and prove one of the three enumerated timeliness exceptions.

We first consider whether Peay's petition properly invoked the newly discovered fact exception at subsection 9545(b)(1)(ii). On appeal, Peay contends that the PCRA court erred in finding that he failed to meet newly discovered fact exception and dismissing his petition as untimely. He argues that while Detectives Singleton and Williams have "been accused of misconduct since the early 2000's," "this information was not available at the time of trial due to the Commonwealth not disclosing it." Peay's Brief at unnumbered 16. Peay reiterates that he discovered the misconduct after "hearing inmates talk about a new list of 'dirty cops.'" *Id*. He then requested "a copy of this list" from the prison law library on July 21, 2024, and received the list on July 27, 2024. *Id*. Peay maintains that he "exercised due diligence by consistently trying to appeal his case and researching in the law library[,] but due to the information being held by the district attorney's office[,] the only way to obtain it was when their office released it." *Id*. at unnumbered 17-18. With respect to Detective Nordo, Peay again avers that he learned of his misconduct on February 20, 2025, when he received a "package of almost 300 pages." *Id*. at unnumbered 18.

Within this discussion Peay also avers the Commonwealth committed a

**Brady** violation, where:

> #1 evidence was suppressed by the prosecution[;] #2 the evidence was favorable to [Peay] and could/would have been used to impeach[; and] #3 there is a reasonable probability that the outcome would be different because the evidence calls into question the integrity of the investigating officers therefore causing the jury to question evidence raising significant doubt which would lead to a not guilty verdict.

**Id**. at unnumbered 16.

The PCRA court determined that Peay failed to invoke the newly discovered fact exception, and thus his PCRA petition was untimely. The court reasoned Peay "offered no explanation on why [the] information could not have been obtained earlier by exercise of due diligence." PCRA Court Opinion, 11/25/25, at 6.

We disagree with this determination, and conclude that Peay, a *pro se* inmate, met the required threshold. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii). Peay's PCRA petition averred that: he overhead inmates discussing detectives accused of misconduct; he immediately requested information from the prison library; and within days, he received information showing that Detectives Singleton and Williams, who interviewed witnesses in his case, were accused of misconduct. Peay's supplemental petition averred that he subsequently received more information that involved Detective Nordo. We emphasize that under subsection 9545(b)(1)(ii), Peay was only required to show that these facts were previously unknown to him and that he exercised due diligence to

discover those facts. *See Brown*, 111 A.3d at 176-77. We thus determine Peay properly invoked this exception to the time bar.

Next, although Peay did not refer to subsection 9543(a)(2)(vi) in his PCRA petition or appellate brief, we consider whether he has established a meritorious after-discovered evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vii) (requiring the petitioner to plead and prove "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced").

The PCRA court found that even if Peay's petition were timely, which we have determined it was, his claims would not merit relief. First, with respect to Woodson, who at trial disavowed his prior statement to Detective Singleton, the PCRA court reasoned that the jury heard his trial testimony, along with the contents of his initial statement, "and was able to evaluate [Woodson's] credibility." PCRA Court Opinion, 11/25/25, at 8. Additionally, Peay "has not produced any statements from . . . Woodson indicating new allegations of misconduct by police." *Id.*

With respect to Jones, the PCRA court rejected Peay's assertion that Jones cooperated with Detective Williams in order "to obtain leniency in a separate criminal he was facing at the time." *Id.* at 7. The court reasoned:

> At trial, Jones . . . testified that he had entered a guilty plea agreement in a separate criminal case and that he did not receive any specific promises for testifying in this matter. [N.T., 6/7/12, at 46-47. Peay] has not provided any evidence that Detective

- 14 -

J-S22019-26

Williams or Detective Singleton had any involvement in this plea agreement, which was made with the federal government on unrelated charges.

*Id*. at 7-8 (some record citations omitted).

Finally, with respect to Detective Nordo and his interview of Burley, the PCRA court reasoned:

Detective . . . Nordo participated in the investigation of [the Victim's] murder, not the nonfatal shooting that is the underlying matter here. He interviewed . . . Burley on June 14, 2010, [who stated Terry told him that Terry] shot and killed the [V]ictim to prevent him from testifying against [Peay]. The statements were referenced in [a] pre-trial motion to admit [the Victim's] statement at this trial, but [Burley's statements] were not presented at trial or used at trial to establish [Peay] as the shooter. [Peay] alleges that "without . . . Burley's statement, the Commonwealth has no way of directly connecting the [Victim's] murder to [Peay] or anyone associated with [Peay." Peay] does not specify what information he believes the prosecution suppressed regarding Detective Nordo's allegations of misconduct in another case and how it impacted his case.

. . . Additionally, . . . Burley has not made any claims about misconduct committed by Detective Nordo in this instant matter. [Peay] has not pled or proven that Detective . . . Nordo engaged in misconduct in this case.

*Id*. at 8-9 (record citations omitted). In sum, the PCRA court concluded that Peay had "not established that the misconduct of Detectives Nordo, Williams, and Singleton in other matters would have 'put the whole case in such a different light as to undermine confidence in the verdict.'" *Id*. at 9.

After careful review of the record, we determine that the record supports the PCRA court's denial of relief. First, with respect to Woodson, the jury heard Woodson's trial testimony where he disavowed his statement to

- 15 -

Detective Singleton, claiming he was under the influence at that time and that Detective Singleton "guided [him] through the whole interview [and Woodson] was just like, yes, whatever." *Id*. at 87-88, 91. The jury also heard Detective Singleton's testimony that when Woodson gave the statement, he did not appear to be intoxicated. *See* N.T., 6/7/12, at 7-8. It was within the jury's province to weigh all of this evidence and it was free to believe all, part, or none of the evidence. *See Commonwealth v. Smith*, 181 A.3d 1168, 1185 (Pa. Super. 2018) (citation omitted). In any event, Peay has failed to explain why the alleged new evidence, of Detective Singleton's alleged misconduct in unrelated cases, was relevant to his interview of Woodson and would have impacted the outcome of this case.

With respect to Jones, Peay averred that he testified in order to gain a sentencing advantage in his own federal robbery matters. However, at trial, Jones testified about his pending federal robbery charges and his attorney's advice to cooperate with the government for favorable treatment, but clearly stated that the government had not promised him. Similarly, the jury was free to believe all, part, or none of Jones's testimony. *See id*. Importantly, Peay offered no connection between Jones' alleged motivation to testify and the new evidence of Detective Williams' alleged misconduct in unrelated matters.

Finally, with respect to Detective Nordo, Peay does not refute the PCRA court's rationale that his interview of Burley related to the June 2010 murder

- 16 -

of the Victim, and not the March 2010 shooting, which was the sole subject of the instant charges. Peay likewise does not refute the PCRA court's observation that Burley's statement was "not presented at [the instant] trial or used . . . to establish [Peay was] the shooter." PCRA Court Opinion, 11/25/25, at 8.

In sum, Peay fails to explain why the alleged, vague misconduct of three detectives in unrelated criminal matters affected the outcome of his trial. **See** 42 Pa.C.S.A. § 9543(a)(2)(vi). Accordingly, we affirm the order dismissing the PCRA petition, albeit on different grounds. **See Brown**, 111 A.3d at 179 (explaining that appellate court can affirm PCRA court's decision on any basis).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/11/2026